IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TAMMY ALLISON HOLLOWAY,          §
                                 §
          Plaintiff,             §
                                 §
V.                               §          No. 3:21-cv-179-K-BN
                                 §
MONTGOMERY COUNTY,               §          **Entered Conditionally**
MARYLAND, ET AL.,                §          **Under Seal,** *Ex Parte*
                                 §
          Defendants.            §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Tammy Allison Holloway, an attorney resident in Dallas, Texas,
brings this *pro se* action against Montgomery County, Maryland; the Administrative
Judge and the Clerk for the County's Circuit Court; the Maryland Labor Secretary;
and the Fair Practices Officer at the Maryland Judicial Center, alleging that all
defendants have violated her rights protected by the Americans with Disabilities Act
(the ADA), that the County has violated her rights protected by the Fourteenth
Amendment, and that three of the individual defendants have participated in a
conspiracy actionable under 42 U.S.C. § 1983. *See* Dkt. No. 1.

Holloway's claims stem from actions taken in the course of a family court
proceeding pending in Montgomery County. *See id.,* ¶¶ 11-73. She requests
declaratory relief and damages. *See id.* at 14-15. And she has filed *ex parte* an
Emergency Motion for a Temporary Restraining Order and Preliminary Injunction
[Dkt. No. 2], requesting that this Court enjoin the Maryland state court proceeding
(the TRO Motion).

United States District Judge Ed Kinkeade has referred Holloway's *pro se* case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b).

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny the TRO Motion, unseal this motion and these findings, conclusions, and recommendation, and dismiss this action without prejudice under 28 U.S.C. § 1406(a).

## Legal Standards and Analysis

I.   <u>Preliminary Injunctive Relief</u>

As "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," "[t]o obtain a temporary restraining order, an applicant must show entitlement to a preliminary injunction." *Horner v. Am. Airlines, Inc.*, No. 3:17-cv-665-D, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (citations and internal quotation marks omitted). But granting a preliminary injunction "is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citing *Allied Mktg. Grp., Inc. v. C.D.L. Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989)).

Holloway must therefore unequivocally "show (1) a substantial likelihood that [she] will prevail on the merits, (2) a substantial threat that [she] will suffer irreparable injury if the injunction is not granted, (3) [her] threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water*

*Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (internal quotation marks omitted); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

To begin, Holloway requests entry of a TRO *ex parte* and includes with her TRO Motion the following Certificate of Notification Efforts:

> Pursuant to Rule 65(b)(1)(B)'s requirement that its "attorney certif[y] in writing any efforts made to give notice and the reasons why it should not be required" Fed. R. Civ. P. 65(b)(1)(B), Plaintiff attempted to contact [Defendant] Tiffany Robinson[, the Maryland Labor Secretary,] by telephone … on January 27, 2021, to no avail. She called the Clerk's Office…. However, Plaintiff is also an attorney licensed both in Maryland and Texas, and is cautious as to not violate Texas Code of Judicial Conduct Canon 3(B)(8), which states do not confer with the trial judge regarding the motion in an original proceeding in which the trial judge is the respondent. Here, [Defendant] Montgomery County is the municipality that controls the Circuit Court for Montgomery County in which [Defendant] Judge Greenberg is the Administrative Judge. As the Administrative Judge, he oversees all judges in the Court, including the Clerk's Office. The ongoing proceeding is the underlying matter before this court as well as the actions of the Circuit Court for Montgomery County depriving Plaintiff of the Federal rights that initiated the underlying motions in the underlying ongoing state proceedings before this court. As Plaintiff is a resident of Texas, and is bringing this Complaint before this Texas Court, she cites only to the Texas Code of Judicial Conduct.

Dkt. No. 2 at 5.

But Holloway's complaint is not verified. Nor has she provided an affidavit as required by Rule 65(b)(1)(A). So, even if the Court accepts her allegations as substantively sufficient, the undersigned finds that Holloway's TRO Motion does not meet Rule 65(b)(1)'s *ex parte* standards. *See Breitling v. LNV Corp.*, No. 3:14-cv-3322-M, 2014 WL 5510857, at *1 (N.D. Tex. Oct. 28, 2014) (Rule 65(b)(1) "permits this Court to issue a temporary restraining order only if 'specific facts *in an affidavit or a*

*verified complaint* clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required'" (quoting FED. R. CIV. P. 65(b)(1); further observing that, "[p]ursuant to Local Rule 83.14, '*[p]ro se* parties must read and follow the local civil rules of this court and the Federal Rules of Civil Procedure'")).

While the undersigned finds that Holloway has not met the *ex parte* standards, these findings, conditions, and recommendation are conditionally entered under seal, *ex parte* to allow Holloway to object to this finding. But, if the Court accepts or adopts this finding, it should unseal both the TRO Motion and these findings, conclusions, and recommendation.

Holloway also has not shown that there is a substantial likelihood that she will prevail on the merits of her claims:

## A.    ADA Claim

First, in bringing her ADA claim, she alleges that she "is authorized under Title II of the ADA to bring this claim as it provides rights, remedies, and procedures only 'to any *person* alleging discrimination.'" Dkt. No. 1, ¶ 76 (quoting 42 U.S.C. § 12133). And she alleges, multiple times, that she previously requested "a reasonable accommodation" from the state court, which requests were denied. *Id.*, ¶¶ 23, 28, 44, 48, 55, 73. But Holloway fails to allege facts to show – or from which the Court may infer – that she is a qualified individual with a disability within the meaning of the ADA.

Title II of the ADA "covers discrimination in the provision of public services." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004) (citing 42 U.S.C. § 12131 et seq.). And it

> states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.130(a) ("No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity").

*Greer v. Richardson Indep. Sch. Dist.*, 472 F. App'x 287, 290-91 (5th Cir. 2012) (per curiam) (footnote omitted); *cf. id.* at 290 n.1 ("[b]ecause the language and standards are virtually identical for Title II of the ADA and Section 504 of the Rehabilitation Act, [ ] consider[ing the plaintiff's] claims under both statutes concurrently but [ ] refer[ring] only to the ADA for brevity" (citations omitted)).

But merely alleging that a defendant has violated the ADA is not enough to allege a plausible claim under the statute. Instead, to plausibly allege a claim under Title II of the ADA, a plaintiff must allege facts to show – or from which the Court may infer –

> "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability."

*Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017) (quoting *Melton*, 391 F.3d at 671-72); *accord Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

If a plaintiff does not, the ADA claim should be dismissed. *See, e.g., Nelson v.*

*Collins*, 765 F. App'x 75, 75-76 (5th Cir. 2019) (per curiam) (affirming dismissal of an ADA Title II claim where the plaintiff's "allegations [did] not set forth facts supporting a claim that he was discriminated against in any way because of his disability"); *Mora v. Univ. of Tex. Sw. Med. Ctr.*, No. 3:09-cv-927-N, 2011 WL 13183237, at *4 (N.D. Tex. Feb. 10, 2011) ("Mora fails to allege sufficient facts that support a plausible claim that she is an individual with a disability. Although she offers the conclusory statements that she has an 'impairment' that 'substantially limits her major life activities,' she fails to identify any life activity that her alcoholism affects. Although Mora need not plead a prima facie case, she must provide grounds demonstrating an entitlement to relief that are more than labels and conclusions." (citations omitted)), *aff'd*, 469 F. App'x 295 (5th Cir. 2012) (per curiam).

And even if the Court accepts that Holloway has a qualifying disability – which itself is not plausible based on the current complaint – her allegations do not support a plausible claim of discrimination under Title II of the ADA by including facts that, for example, permit the Court to infer that the defendants discriminated against her based on a qualifying disability. Put another way, while Holloway need not, at this time, plead a prima facie case of disability discrimination under Title II of the ADA, her complaint must include facts that allow the Court to infer more than the mere possibility of disability discrimination. *Cf. Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) ("Although [the plaintiff] did not have to submit evidence to establish a prima facie case of discrimination at [the motion to dismiss] stage, he had to plead sufficient facts on all of the ultimate elements of a disparate

treatment claim to make his case plausible." (citations omitted)).

### B.    Municipality Claim under Section 1983

Against Montgomery County, Maryland, a municipality, Holloway alleges a claim actionable under Section 1983 that her "constitutional right to relocate, be notified of numerous court proceedings at the Circuit Court for Montgomery County, to participate in the proceedings, to have hearings on various motions, and more violated, at minimum, the equal protection and due process clauses of the Fourteenth amendment." *E.g.*, Dkt. No. 1, ¶ 80.

A municipality may only "be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted). That is, "[t]here is no vicarious municipal liability under § 1983; rather, plaintiffs 'must prove that "action pursuant to official municipal policy" caused their injury.'" *Three Legged Monkey, L.P. v. City of El Paso, Tex.*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting, in turn, *Monell*, 436 U.S. at 691)).

To assert liability under *Monell*, a plaintiff must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). But Holloway's complaint lacks "'minimal factual allegations' that ultimately

could support any theory of *Monell* liability" against Montgomery County. *Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2019 WL 5031357, at \*17 (N.D. Tex. July 29, 2019) (quoting *E.G. by Gonzalez v. Bond*, No. 1:16-cv-68-BL, 2017 WL 3493124, at \*6 (N.D. Tex. June 29, 2017)), *rec. accepted*, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019). For example, she has not alleged that an official policy of the County resulted in the asserted violations of her constitutional rights.

And, only insofar as Holloway may allege that Montgomery County may be held liable through actions by, for example, Defendant Greenberg, as he is alleged to be the Administrative Judge who oversees the County's Circuit Court, Holloway fails to allege how Greenberg – or any other individual defendant – possesses final policymaking authority for the County. *See Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019) ("[E]ven a single decision may constitute municipal policy in 'rare circumstances' when the official or entity possessing 'final policymaking authority" for an action 'performs the specific act that forms the basis of the § 1983 claim." (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing, in turn, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482, 484-85 (1986)); citation omitted)).

## C.   Section 1983 Conspiracy Claim

Holloway finally alleges that Judge Greenberg, the Circuit Court Clerk, and the Fair Practices Officer at the Maryland Judicial Center conspired to violate her constitutional rights because they "all responded to [Holloway] similarly by denying her requests for accommodations, denying her access to fairly participate in court

proceedings, including the December 18, 2020, scheduling hearing, and more." *E.g.*, Dkt. No. 1, ¶ 84.

But judges generally have absolute immunity for judicial actions taken within the scope of their jurisdiction, which also means that judicial officers are generally immune from suits for money damages. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221-22 (5th Cir. 2009).

"Judicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). "A judge's acts are judicial in nature if they are normally performed by a judge and the parties affected dealt with the judge in his judicial capacity." *Id.* at 285 (internal quotation marks omitted). "[J]udicial immunity is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11; *see Boyd*, 31 F.3d at 284 ("The alleged magnitude of the judge's errors or the mendacity of his acts is irrelevant." (citing *Young v. Biggers*, 938 F.2d 565, 569 n.5 (5th Cir. 1991))). And "[d]isagreeing with a judge's actions does not justify depriving that judge of his or her immunity," *Greenlee v. U.S. Dist. Court*, No. 09-2243-cv-FJG, 2009 WL 1424514, at *2 (D. Kan. May 21, 2009) (citing *Stump*, 435 U.S. at 363).

Likewise, court clerks and similar judicial personnel "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001)

(quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. June 1981)). This quasi-judicial immunity extends to deputy clerks of court when they act as "explicitly commanded by a court decree or by the judge's instructions." *Id.* at 682. And the United States Court of Appeals for the Fifth Circuit has extended this doctrine to clerks of court who act under the directives and orders of the court. *See Small v. Dallas Cnty.*, 170 F. App'x 943, 944 (5th Cir. 2006) (per curiam).

Holloway asserts no facts to show that a state judicial officer or state court official or employee acted outside a judicial capacity. As such, all defendants are entitled to immunity for the actions alleged and no plausible Section 1983 conspiracy has been alleged between them. *Cf. Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("As for his § 1983 conspiracy claim, we explained in our 1990 case *Pfannstiel* that such claims are unique. The plaintiff must not only allege facts that 'establish (1) the existence of a conspiracy involving state action,' but also '(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.' No deprivation, no § 1983 conspiracy." (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992))); *Brinkmann v. Johnston*, 793 F.2d 111, 112-13 (5th Cir. 1986) (per curiam) ("In *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982), we held that 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983."); *Alexander v. Rose*, Civ. A. No. 16-3556, 2016 WL 9560298, at *5 (E.D. La. Oct. 24, 2016) ("In this case, Judge Reese is the only state actor defendant. All of the other

defendants are private citizens who could not act under the color of state law. Therefore, to maintain an action for conspiracy to deprive him of his civil rights, Alexander would have to have a viable § 1983 claim against Judge Reese, which he does not, due to Judge Reese's judicial immunity. As a result, Alexander cannot maintain § 1983 conspiracy claims against White, Pierce, First NBC or LeDoux.").

### D.     Anti-Injunction Act and Section 1983

More broadly, Holloway's request that this federal court in Texas enjoin a state court proceeding in Maryland to protect her constitutional rights does not trigger the Anti-Injunction Act, 28 U.S.C. § 2283 (the AIA), but, to the extent that she seeks an injunction against a defendant acting in a judicial capacity, she may not obtain that relief under Section 1983.

The AIA provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments," 28 U.S.C. § 2283, which "has been interpreted consistently as an absolute bar to any federal court action that has the effect of staying a pending state court proceeding unless that action falls within one of the Act's three specifically designated exceptions," *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 131-32 (5th Cir. 1990) (footnotes and citations and omitted).[1]

---

[1] *Cf. Health Net, Inc. v. Wooley*, 534 F.3d 487, 493 n.2 (5th Cir. 2008) ("'It must be remembered that the anti-injunction act limits federal remedies without ousting federal subject-matter jurisdiction.'" (quoting 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469 at 82 n.19 (2d ed. 2002))).

The prohibition against interfering in state proceedings embodies a strong policy that, recognizing the "independence of the States and their courts, the exceptions should not be enlarged." A federal court cannot enjoin a state-court suit on the grounds that "the state court may have taken action which the federal court [is] certain [is] improper," nor is it appropriate to avoid simultaneous pursuit of claims in courts with concurrent jurisdiction.

Under the Act, an injunction is not appropriate just because it is "related" to the federal court's jurisdiction. If the state court takes an action the federal court or a party to the action finds incorrect, the proper course is typically the state appellate court. Any doubts about the "propriety of a federal injunction ... should be resolved in favor of permitting the state courts to proceed.... The explicit wording of § 2283 itself implies as much."

*Aptim Corp. v. McCall*, 888 F.3d 129, 143-44 (5th Cir. 2018) (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287, 295-96, 295, 296, 297 (1970)).

But, to the extent that Holloway alleges that state actors, specifically state judicial officers or court employees acting in a judicial or a quasi-judicial capacity, have violated her constitutional rights, those claims implicate Section 1983, "an express authorization from Congress permitting federal courts to enjoin state proceedings in order to protect federal rights." *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (citing *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972)).

Thus, Section 2283 does not apply to prevent the Court from enjoining the state proceeding. But Section 1983 itself "does: it expressly disallows injunctive relief against a judicial officer 'for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable.'" *Hatton v. Combs*, 793 F. App'x 801, 803 (10th Cir. 2019) (quoting 42 U.S.C. § 1983; citing *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) ("Although we have previously said that a plaintiff may obtain an injunction against a state judge under

42 U.S.C. § 1983, those statements were abrogated by the Federal Courts Improvement Act of 1996, which provides that 'injunctive relief [against a judicial officer] shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable,' 42 U.S.C. § 1983." (citations omitted))).

### E.   *Younger* Abstention

It also appears that this Court would abstain from exercising its jurisdiction over Holloway's claims under *Younger v. Harris*, 401 U.S. 37 (1971), which, "following *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10-11 (1987), [ ] also applies 'when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government,'" *Health Net, Inc.*, 534 F.3d at 494.

To begin, Section 1983 "does not 'qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.'" *Gates*, 885 F.3d at 880 (quoting *Mitchum*, 407 U.S. at 243; citing *Younger*, 401 U.S. at 43-47).

And, under *Younger*, a federal court should abstain from exercising its jurisdiction when to do so would result in the interference in certain, select state proceedings. *Younger* abstention "applies only to three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Sprint*

*Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting, in turn, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (*NOPSI*); internal quotation marks omitted).

The doctrine requires that federal courts decline to exercise jurisdiction where three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); internal citations omitted); *accord Hood*, 822 F.3d at 222-23.

The unique posture of this case seems to fit within the third of the three exceptional categories identified in *NOPSI* that "define *Younger*'s scope." *Sprint*, 571 U.S. at 78. "For the district court to address claims that question the manner in which a state court handles the enforcement of its orders would directly cause the federal court to interfere with a state court's administration of its duties." *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 F. App'x 945, 948-49 (11th Cir. 2015) (per curiam) (citing *NOPSI*, 491 U.S. at 359, and then finding that "the district court did not abuse its discretion when it found that the case fell within one of the enumerated circumstances" (citing *Sprint*, 571 U.S. at 78)); *see also Pennzoil Co.*, 481 U.S. at 13-14 ("Both *Juidice[ v. Vail*, 430 U.S. 327 (1977),] and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts.

- 14 -

Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained."); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 671 (10th Cir. 2020) ("Thus, both *Juidice* and *Pennzoil* involved requests to directly or indirectly thwart state court compliance processes." (citing *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly."); *Zeeco, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-384-JED-FHM, 2017 WL 6539504, at *2 (N.D. Okla. Dec. 21, 2017) ("What *Younger*, *Juidice*, and *Pennzoil* have in common is that they all involved plaintiffs filing separate federal suits in an attempt to enjoin ongoing state proceedings."))).

And the additional *Middlesex County* factors are present here: "In this case, the state proceedings are judicial in nature and represent important state interests, as state courts must be empowered to enforce their own orders and judgments. Moreover, [Holloway] has had opportunities to raise his federal challenges in these state proceedings and there has been no procedural bar to his doing so." *Dandar*, 619 F. App'x at 949; *see also Pennzoil Co.*, 481 U.S. at 15 ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) ("Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims."); *Gates*,

885 F.3d at 880 ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court." (citing *Moore*, 442 U.S. at 425; emphasis in original)).

II.   <u>Venue</u>

In her complaint, Holloway alleges that venue is proper in this judicial district and division "pursuant to 28 U.S.C. § 1391(e) because [she] resides in this district and no real property is involved in the action." Dkt. No. 1, ¶ 10. But Section 1391(e) is limited to venue for actions where a defendant is an officer or employee of the United States. *See* 28 U.S.C. § 1391(e). None of the defendants here are. So the Court should consider the propriety of venue under Section 1391(b), the venue provision that governs civil rights actions. *See Davis v. La. State Univ.*, 876 F.2d 412, 413 (5th Cir. 1989).

Section 1391 provides that venue is proper in the judicial district: (1) where the defendant resides; (2) where a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district where the action may otherwise be brought, in any judicial district in which any defendant is subject to personal jurisdiction. *See* 28 U.S.C. § 1391(b).

Holloway's allegations do not support venue under Section 1391(b).

And, "[w]hen venue is challenged," *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013) – or, like now, when a district court raises the issue of venue sua sponte, *see, e.g., Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989) –

> the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a). ... [But a] case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or [Federal Rule of Civil Procedure] 12(b)(3).

*Atl. Marine Constr.*, 571 U.S. at 56.

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." And it

> allows a transfer where the first forum chosen is improper due to the existence of some obstacle to adjudication on the merits. *[Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967).] The statute specifically refers to "laying venue in the wrong division or district," but a transfer can be made due to the absence of personal jurisdiction in a district where venue is otherwise proper. *See Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985). ... [A] division or district may be "wrong" under Section 1406(a) when the original court lacks personal jurisdiction. *Id.*

*Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.").

"The district court has broad discretion in determining whether to dismiss or transfer a case in the interest of justice under § 1406(a)." *LSF4 Loan Invs. I, LLC v. Weingart*, No. 3:06-cv-419-M, 2006 WL 2370803, at *3 (N.D. Tex. Aug. 15, 2006); *see also Carter v. H2R Restaurant Holdings, LLC*, No. 3:16-cv-1554-N-BN, 2016 WL 4507459, at *4 (N.D. Tex. July 15, 2016) ("[C]ourts have consistently understood that

- 17 -

they have broad discretion in deciding whether to transfer or dismiss a case based on improper venue." (collecting cases)), *rec. accepted*, 2016 WL 4494370 (N.D. Tex. Aug. 26, 2016).

Here, for the reasons above, explaining why the TRO Motion should be denied, the interest of justice compels that the Court dismiss Holloway's case without prejudice under Section 1406(a).

## Recommendation

The Court should deny Plaintiff Tammy Allison Holloway's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction [Dkt. No. 2], unseal this motion and these findings, conclusions, and recommendation, and dismiss this action without prejudice under 28 U.S.C. § 1406(a).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: January 28, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE